**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SIMI MANAGEMENT CORPORATION,                     No. C-11-5573-DMR

          Plaintiff(s),                              **ORDER DENYING DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS**

    v.

BANK OF AMERICA CORPORATION,

          Defendant(s).

_____/

Defendant Bank of America, N.A. ("BofA") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Simi Management Corporation d/b/a Connell Auto Center's ("Connell") complaint for failing to state a claim for aiding and abetting conversion and embezzlement, aiding and abetting breach of fiduciary duty, breach of contract, and declaratory relief. (*See generally* BofA's Notice of Mot. & Mot. to Dismiss; Mem. of P. & A. in Supp. Thereof ("Def.'s Mot.").) Plaintiff opposes the motion. (*See generally* Pl.'s Mem. in Supp. of Its Opp'n to Def. BofA's Mot. to Dismiss ("Pl.'s Opp'n").) The court conducted a hearing on May 24, 2012. For the reasons below, the court denies Defendant's motion.

**I. Background and Procedural History**

Plaintiff, which operated automobile dealerships, discovered after selling its last franchises in August 2007 that its long-time chief financial officer ("CFO") Roger Reichart had embezzled millions of dollars from the firm from at least November 2001 onward. (Am. Compl. ¶¶ 1, 10.) A year after becoming CFO in 1994, he convinced Connell's management to transfer the company's assets to BofA. (Am. Compl. ¶ 8.) After Connell established its new account, BofA became aware of Reichart's "position within the company and knew he exercised control over Connell Auto's finances and bank accounts." (Am. Compl. ¶ 8.) According to Plaintiff, Reichart frequently went to BofA's principal branch in Oakland, California, and would present a Connell business check made

**United States District Court**
For the Northern District of California

1   payable to "Bank of America" or "Cash."  (Am. Compl. ¶ 3.)  Bank employees then would give him

2   cash or a BofA cashiers check in return.  (Am. Compl. ¶ 3.)  Over the course of hundreds of

3   transactions and many years, Reichart stole over $4 million from Plaintiff.  (Am. Compl. ¶ 3.)  On

4   September 29, 2011, the Alameda County Superior Court sentenced him for grand theft and tax

5   evasion.  (Am. Compl. ¶ 1.)

6           Plaintiff asserts that BofA knowingly participated in Reichart's scheme.  (Compl. ¶ 2.)

7   Specifically, Plaintiff alleges that BofA "knew and did the following:"

8       a) Bank of America issued hundreds of cashiers checks for Reichart using Connell
        Auto's monies, and at least 385 of those cashiers checks, totaling $1,692,456, had
9       payees such as "VISA", "American Express", "Neiman Marcus", and "Saks Fifth
        Avenue". . . . As Bank of America knew when it issued the cashiers checks with
10      Connell Auto's funds, creditors such as Visa, American Express, Neiman Marcus and
        Saks Fifth Avenue do not need to be paid with cashiers checks, and the use of
11      cashiers checks to pay such creditors would not appear on Connell's bank statements
        or cancelled checks.
12
        b) In addition to the cashiers checks, employees at the Main Oakland Branch handed
13      over enormous amounts of cash to Reichart. By 2007, on a weekly basis, Reichart
        was walking out the Oakland Main Branch doors with anywhere between $16,000
14      to $44,000 in cash and cashiers checks taken from Connell Auto's bank accounts,
        and he was doing so by structuring his withdrawals to be in increments less than
15      $10,000.00 each, and generally less than $5,000.00 each. His weekly average in
        2007 was more than $27,000 in cash and cashiers checks.
16
        c) To evade Bank of America's transaction reporting requirements under federal law
17      as well as the bank's internal controls, over 95% of the transactions conducted by
        Reichart and the Main Oakland Branch were carried out using Connell Auto
18      company checks that did not exceed $10,000. Stealing millions of dollars by
        checks made payable in amounts less than $10,000 requires lots of trips to the
19      bank. Reichart was in Oakland Main Branch numerous times a week, every week
        of the month, presenting Connell Auto checks that individually did not exceed
20      $10,000. Oftentimes, on the same banking day, Reichart and Main Oakland
        Branch would use two Connell Auto company checks to obtain more than $10,000
21      in cash and cashiers checks from Connell Auto's accounts—however, the two
        Connell Auto checks used to obtain the cash and cashiers checks were each under
22      $10,000. If the transactions were legitimate, there would be no reason to use two
        separate company checks—Reichart and Bank of America would have used one
23      check for the total amount of the transaction (i.e., in an amount over $10,000).

24      d) Connell Auto is informed and believes, and thereon alleges, that Bank of America
        employees are trained to recognize "structuring" or "smurfing" undertaken to
25      evade regulatory reporting requirements, and therefore knew at all times that
        Reichart was engaged in such illegal activities using his employer's funds.
26
        e) Every Bank of America cashiers check contains a Remitter line identifying the
27      purchaser of the check. On many occasions, Bank of America intentionally altered
        the identity of the Remitter imprinted on the cashiers check to falsely show
28      someone other than Connell Auto as the purchaser of the cashiers check.

**United States District Court**

For the Northern District of California

1

2    f) Bank of America issued statements for Connell Auto's bank accounts that did not
     accurately disclose the cash and cashiers check transactions, and did not show that
3    Bank of America was regularly issuing cashier checks with payees such as
     "VISA", "American Express", "Neiman Marcus" and "Saks Fifth Avenue". The
4    bank statements issued by Bank of America in fact concealed where Connell
     Auto's monies were going, and to whom.

5    g) After withdrawing cash from Connell Auto's bank accounts, Reichart would
     sometimes deposit the cash into a Bank of America personal checking account
6    maintained in the name of Lorraine Espiritu. Withdrawing the cash from Connell
     Auto's account and depositing it into Espiritu's checking account took place in the
7    same banking transaction, by the same Oakland Main Branch teller. Bank of
     America also issued many cashiers checks payable to it and then credited those
8    checks to Bank of America loan accounts in Espiritu's name and to Espiritu's
     Banc of America brokerage account. Bank of America knew that these Espiritu
9    Bank of America accounts were not accounts affiliated with Connell Auto in any
     way.
10
     h) Bank of America issued cashiers checks payable to an individual but then allowed
11   Reichart to negotiate the check himself for cash.

12   i) When other Bank of America branches or financial institutions were presented
     with cashiers checks for negotiation and called the Oakland Main Branch with
13   questions regarding the suspicious transaction, Oakland Main Branch employees
     told those institutions to proceed with the transaction and accept the check.
14
     j) In most instances when Reichart presented a Connell Auto check to be converted
15   into a Bank of America cashiers check, Bank of America accepted a Connell Auto
     check with only Reichart's signature, notwithstanding that the Connell Auto
16   checks had two lines for two authorized signatures. Aside from any question as to
     whether the item was properly payable, the Connell Auto check had an obvious
17   irregularity.

18   k) When Connell Auto discovered Reichart's embezzlement scheme, it contacted
     Bank of America to obtain copies of its checks and the cashiers checks purchased
19   with its monies. Bank of America briefly cooperated, but then abruptly stopped
     providing Connell Auto copies of the cashiers checks, no doubt realizing they
20   evidenced Bank of America's knowing participation in Reichart's embezzlement
     scheme. It did not resume providing Connell Auto with copies of its own checks
21   and the cashiers checks purchased with its monies until ordered to so by Judge
     Tigar of the Alameda County Superior Court. Even then, Bank of America
22   dragged its feet, allowing needed records to be allegedly destroyed as part of Bank
     of America's supposed general retention policies for customer accounts.
23
     (Am. Compl. ¶ 4; *accord* Am. Compl. ¶¶ 10-14, 18.)  In addition, Plaintiff asserts that BofA
24
     "continued to engage in these transactions even though it knew they were not legitimate Connell
25
     Auto business transactions" and that the bank employees "informed Reichart of the type of
26
     transactions that would be flagged as suspicious or otherwise reviewed internally by other Bank of
27
     America personnel."  (Am. Compl. ¶ 15; *accord* Am. Compl. ¶ 16.)  In this manner, "Reichart and
28

1  Bank of America, acting together, concealed the true nature of the [embezzlement] transaction[s]."

2  (Am. Compl. ¶ 16; *see* Am. Compl. ¶¶ 17, 22.)

3       Plaintiff filed suit against BofA in California state court on October 18, 2011, alleging aiding

4  and abetting conversion and embezzlement, aiding and abetting breach of fiduciary duty, and breach

5  of contract. [*See* Docket No. 1.] Defendant removed the case to this Court on the basis of diversity

6  jurisdiction on November 17, 2011. [*See* Docket No. 1.] On November 3, 2011, Defendant moved

7  to dismiss the complaint for failure to state a claim upon which relief can be granted. [Docket No.

8  6.] On January 17, 2012, the court granted in part and denied in part the motion. [Docket No. 16.]

9  Specifically, the court dismissed with leave to amend Plaintiff's aiding and abetting claims because

10 "Plaintiff ha[d] not adequately alleged that BofA had actual knowledge of Reichart's embezzlement

11 and conversion or his specific breach of fiduciary duty." *Simi Mgmt. Corp. v. Bank of Am. Corp.*,

12 No. 11-5573-DMR, 2012 WL 259865, at *4 (N.D. Cal. Jan. 27, 2012). The court declined to

13 dismiss Plaintiff's breach of contract claim. *Id.* at *6.

14      Plaintiff filed its amended complaint on March 29, 2012. [Docket No. 22.] Defendant again

15 moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's complaint for

16 failure to state a claim.

17                          **II. Legal Standard**

18      When reviewing a motion to dismiss for failing to state a claim pursuant to Federal Rule of

19 Civil Procedure 12(b)(6), the court must "accept as true all of the factual allegations contained in the

20 complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may

21 dismiss the case "only where there is no cognizable legal theory" or there is an absence of

22 "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular*

23 *Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729,

24 732 (9th Cir. 2001)) (quotation marks omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

25 (2009)). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court

26 to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

27 U.S. at 678 (citation omitted). In other words, the facts alleged to demonstrate an "entitle[ment] to

28 relief require[] more than labels and conclusions, and a formulaic recitation of the elements of a

**United States District Court**
For the Northern District of California

4

**United States District Court**
For the Northern District of California

1  cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2005) (brackets in

2  original) (quotation marks omitted) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v.*

3  *City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001) ("Conclusory allegations of law . . . are insufficient

4  to defeat a motion to dismiss." (citation omitted)).

5         As a general rule, a court may not consider "any material beyond the pleadings" when ruling

6  on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However,

7  in certain circumstances, the court may consider extrinsic evidence without converting the motion

8  into a motion for summary judgment. *Id.* (citation omitted); *see* Fed. R. Civ. P. 12(d) ("If, on a

9  motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by

10  the court, the motion must be treated as one for summary judgment under Rule 56."). For example,

11  the court may examine "material which is properly submitted as part of the complaint." *Lee*, 250

12  F.3d at 688 (citation and quotation marks omitted). If a document's authenticity is not contested and

13  the complaint "necessarily relies" on it, the court may take that document into account even if it is

14  not physically attached to the complaint. *Id.* (citation and quotation marks omitted).

**III. Discussion**

**A. Plaintiff's Aiding and Abetting Claims**

17         BofA contends that Plaintiff has once again failed to properly state aiding and abetting

18  claims, and that such claims trigger a heightened pleading standard. The bank further asserts that

19  Plaintiff's Amended Complaint still "does not assert [that BofA] had actual knowledge" of

20  Reichart's criminal activities and merely asserts "conclusory, formulaic assertions" that fall short of

21  the pleading requirements. (Def.'s Mot. 6-7 (footnote and quotation marks omitted).) BofA also

22  devotes substantial portions of its brief to an explanation of the various duties that it contends banks

23  do not owe their depositors under California law. It reasons that if banks do not have certain duties

24  to depositors, then Plaintiff cannot hold it liable for not having performed them.

**1. Aiding and Abetting in California**

26         Under California law, liability for aiding and abetting the commission of an intentional tort

27  may attach in two ways: if a defendant (1) "'knows the other's conduct constitutes a breach of duty

28  and gives substantial assistance or encouragement to the other to so act'" or (2) "'gives substantial

5

United States District Court

For the Northern District of California

1   assistance to the other in accomplishing a tortious result and the [entity]'s own conduct, separately

2   considered, constitutes a breach of duty to the third person.'" *Seaman v. Sedgwick, LLP*, No. 11-

3   664, 2012 WL 254046, at *7 (C.D. Cal. Jan. 26, 2012) (not reported in F. Supp. 2d) (quoting *Casey*

4   *v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005)).  The first of these two modes of

5   proof requires that the defendant "have *actual knowledge* of the *specific primary wrong* the

6   defendant substantially assisted." *In re First Alliance Mortgage Co.*, 471 F.3d 977, 993 (9th Cir.

7   2006) (emphasis added) (citation and quotation marks omitted); *accord Casey*, 127 Cal. App. 4th at

8   1146.  Mere allegations that a defendant had "vague suspicion of wrongdoing" or knew of "wrongful

9   or illegal conduct . . . d[o] not constitute sufficient pleading" that the defendant had "actual

10  knowledge." *In re First Alliance Mortgage Co.*, 471 F.3d at 993 n.4 (citation and quotation marks

11  omitted).  In a breach of fiduciary duty claim, the plaintiff "must allege the defendant's actual

12  knowledge of the specific breach of fiduciary duty for which it seeks to hold the defendant liable."

13  *Casey*, 127 Cal. App. 4th at 1152.

14          **2. Analysis**

15          Plaintiff has adequately alleged that BofA had actual knowledge of Reichart's embezzlement

16  and conversion, and his specific breaches of fiduciary duty.  For aiding and abetting conversion and

17  embezzlement, the Amended Complaint states that "Bank of America . . . had *actual knowledge* that

18  Reichart was converting and embezzling Connell Auto's monies."  BofA "had actual knowledge that

19  Reichart was engaged in the [following] conduct [that] . . . constituted a breach of fiduciary duty

20  owed by Reichart to Connell[:]"

21              (a) embezzling its monies; (b) engaging in in-branch transactions at Oakland
            Main Branch that were designed to conceal from and mislead Connell Auto regarding
22          the use of its monies and the identity of persons/payees who were receiving Connell
            Auto's monies; (c) issuing company checks in amounts that did not exceed $10,000
23          for the purpose of disguising the true nature of the transaction and to prevent Connell
            Auto from detecting the transactions and how its monies were actually being used;
24          (d) purchasing cashiers checks with Connell Auto's monies and changing the
            Remitter from Connell Auto to the name of a third party, thereby knowingly
25          falsifying a negotiable instrument purchased with company funds; and (e) conducting
            in-branch transactions at Oakland Main Branch in which Reichart presented company
26          checks for cash and then deposited the cash proceeds into the Bank of America
            personal checking account of Lorraine Espiritu.

27

28

6

**United States District Court**
For the Northern District of California

1   (Am. Compl. ¶ 32.)  These statements allege that BofA had actual knowledge of the specific torts

2   Reichart committed.  *See In re First Alliance Mortgage Co.*, 471 F.3d at 993; *Casey*, 127 Cal. App.

3   4th at 1151-52.  Plaintiff therefore has properly pled aiding and abetting claims.

4          BofA is incorrect in its assertion that a heightened pleading standard attaches to *Casey*'s

5   "actual knowledge" requirement.  Neither the Federal Rules of Civil Procedure nor case law call for

6   the vaulted pleading standard that BofA proposes.  Federal Rule of Civil Procedure 9(b) necessitates

7   that only fraud "must be pled with specificity[;] '[m]alice, intent, *knowledge*, and other condition of

8   mind of a person may be averred generally.'"  *Neilson v. Union Bank of Cali., N.A.*, 290 F. Supp. 2d

9   1101, 1119 (C.D. Cal. 2003) (second brackets in original) (emphasis added) (quoting Fed. R. Civ. P.

10  9(b)).  Plaintiff thus only needs to allege facts that, in concert with allegations that BofA had actual

11  knowledge of Reichart's criminal acts, "allow[] the court to draw the reasonable inference that the

12  defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663 (citation omitted).  Plaintiff

13  has met this standard.

14          BofA's argument that it cannot be held liable for legal duties it does not have misses the

15  point.  California law does limit the duties of a bank toward its depositors.  *See Casey*, 127 Cal. App.

16  4th at 1149-51.  Nevertheless, a bank's actions, even if they do not independently give rise to

17  liability, may serve as indicia of actual knowledge that buttress an aiding and abetting claim.  *Id.* at

18  1151-52; *see also Neilson*, 290 F. Supp 2d at 1120 (holding that use of atypical banking procedures

19  could raise inference that banks had actual knowledge of depositor's specific wrongdoing and

20  supports general allegations of actual knowledge in claims for aiding and abetting breach of

21  fiduciary duty).  Plaintiff therefore has fulfilled the pleading requirements for its aiding and abetting

22  causes of action.[1]  Because Plaintiff has properly stated claims for aiding and abetting embezzlement

23  and conversion, and aiding and abetting breach of fiduciary duty, the court denies BofA's motion to

24  dismiss these claims.

25          **B. Plaintiff's Breach of Contract Claim**

26  _____

27          [1]Because Plaintiff has adequately pledged aiding and abetting claims based on BofA's actual
    knowledge of the intentional tort, it need not address Plaintiff's alternative theory of aiding and abetting
    liability based on the second mode of proof of such claims, as set forth in *Casey*, 127 Cal. App. 4th at
28  1144. (*See* Am. Compl. ¶¶ 26, 33.)

**United States District Court**
For the Northern District of California

1

**1. The Parties' Contentions**

2      Plaintiff claims that BofA breached two written contracts between them, one operative prior

3  to October 2, 2007 and one operative after that date.  (Am. Compl. ¶¶ 37-44.)  With respect to the

4  earlier contract, Plaintiff asserts that BofA has not provided it with a copy of the agreement, except

5  for a signature card which Plaintiff has attached to its Amended Complaint as an exhibit.  (Am.

6  Compl. ¶¶ 37, 40-42; *see* Am. Compl. Ex. C.)  Plaintiff alleges that this contract permitted BofA "to

7  pay items presented on Connell Auto's accounts [only if] the item bore two authorized signatures"

8  and that BofA breached this contract by accepting checks signed by Reichart alone.  (Am. Compl.

9  ¶ 41; *see* Am. Compl. ¶¶ 42-44.)  Plaintiff claims that BofA breached the later contract when it

10  accepted checks presented by Reichart, because the new contract no longer listed Reichart as an

11  authorized signatory.  (Am. Compl. ¶¶ 39, 42-44; *see* Am. Compl. Ex. B.)  Moreover, according to

12  Plaintiff, both contracts stipulated that Connell "could obtain copies of cancelled checks and other

13  paper items paid against its accounts" upon request.  (Am. Compl. ¶ 42.)  Plaintiff asserts that BofA

14  breached the contracts when it did not provide Plaintiff with copies of cancelled checks and other

15  paper items paid against the firm's accounts, and by destroying some of Plaintiff's banking records

16  after receiving notice of Reichart's embezzlement.  (Am. Compl. ¶ 43.)

17      BofA, however, contends that the signature card attached as Exhibit C to the Amended

18  Complaint was the entire operative contract between it and Plaintiff until October 2, 2007.  (Def.'s

19  Mot. 13-14; *see also* Am. Compl. Ex. C.)  BofA notes that the signature card states, "Bank may pay

20  out funds on any one of the signatures below:," and identifies Reichart as an authorized signer on

21  Plaintiff's account.  (Def.'s Mot. 14.)  Thus, contrary to Plaintiff's characterization of the contractual

22  relationship between them, BofA avers that it was entitled to assume as a matter of law that Plaintiff

23  authorized Reichart's actions.  (Def.'s Mot. 14-15.)  BofA asks the court, implicitly through the

24  incorporation by reference doctrine, to treat this signature card as the complete contract between the

25  parties before October 2, 2007.  (Def.'s Mot. 13-14.)  BofA presents no arguments against Plaintiff's

26  claim that BofA breached their contract by not providing Plaintiff with copies of cancelled checks

27  and other paper items paid against the firm's accounts, and by destroying some of Plaintiff's banking

28  records.

United States District Court

For the Northern District of California

1    Plaintiff assails BofA's argument on several grounds. It insists that BofA has not produced

2  an agreement operative prior to October 2, 2007 which the company, as opposed to its officers,

3  signed. (Pl.'s Opp'n 10-11 ("Exhibit C [of the Amended Complaint, the signature card,] is an

4  uncompleted Bank of America form contract that was not executed by Connell Auto.").) Plaintiff

5  thus states that it reasonably disputes the signature card's authenticity as the full contract between

6  the parties. (Pl.'s Opp'n 11.) Plaintiff also highlights that BofA does not contest that it breached the

7  post-October 2, 2007 contract, which warrants denial of BofA's motion to dismiss the claim. (Pl.'s

8  Opp'n 12.)

9              **2. Incorporation by Reference**

10    After examining the parties' submissions, the court finds that various statements on the

11  signature card suggest that it may not be the full valid contract between Connell and BofA. For

12  example, as pointed out by Plaintiff, it does not appear to be signed by a representative of the

13  corporate customer, Simi Management Corp. (*Compare* Am. Compl. Ex. C (signature card), *with*

14  Am. Compl. Ex. B (post-October2, 2007 contract between parties).) Defendants' assertion that the

15  signature card is the sole contract between the parties prior to the October 2, 2007 contract also is

16  contradicted by the face of the signature card itself. It states: "You acknowledge receipt of the

17  deposit agreement. The agreement includes a provision for alternative dispute resolution." (Am.

18  Compl. Ex. C at 1.) The court therefore will not apply the incorporation by reference rule and will

19  not consider the signature card as a complete contract in the disposition of this motion.

20              **3. Analysis**

21    Plaintiff has properly stated a breach of contract claim. The contents of the pre-October 2,

22  2007 contract at issue between the parties remains unclear. Within this hazy factual context, BofA

23  has failed to show that there is "no cognizable legal theory" by which Plaintiff could prevail on this

24  claim. *Shroyer*, 622 F.3d at 1041 (citation and quotation marks omitted). The court therefore denies

25  BofA's motion as to the Plaintiff's breach of contract claim.

26    Moreover, due to the same factual paucity of the record at this early stage of the litigation,

27  and the often factually dependent nature of statutes of limitations, the court does not address BofA's

28

9

statute of limitations arguments at this time.  *See Cowen v. Aurora Loan Servs.*, No. 10-452, 2010

WL 3342196, at \*5 (D. Ariz. Aug. 25, 2010).

### IV.  Conclusion

The court denies Defendant Bank of America's Motion to Dismiss.

IT IS SO ORDERED.

Dated: June 4, 2012



DONNA M. RYU
United States Magistrate Judge