1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SIMI MANAGEMENT CORPORATION,                    No. C-11-5573-DMR

              Plaintiff(s),                    **ORDER DENYING DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO DISMISS**

       v.

BANK OF AMERICA CORPORATION,

              Defendant(s).

_____/

Defendant Bank of America, N.A. ("BofA") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff Simi Management Corporation d/b/a Connell Auto Center's ("Connell") complaint for failing to state a claim for aiding and abetting conversion and embezzlement, aiding and abetting breach of fiduciary duty, breach of contract, and declaratory relief.  (*See generally* BofA's Notice of Mot. & Mot. to Dismiss; Mem. of P. & A. in Supp. Thereof ("Def.'s Mot.").)  Plaintiff opposes the motion.  (*See generally* Pl.'s Mem. in Supp. of Its Opp'n to Def. BofA's Mot. to Dismiss ("Pl.'s Opp'n").)  The court conducted a hearing on May 24, 2012. For the reasons below, the court denies Defendant's motion.

**I. Background and Procedural History**

Plaintiff, which operated automobile dealerships, discovered after selling its last franchises in August 2007 that its long-time chief financial officer ("CFO") Roger Reichart had embezzled millions of dollars from the firm from at least November 2001 onward.  (Am. Compl. ¶¶ 1, 10.)  A year after becoming CFO in 1994, he convinced Connell's management to transfer the company's assets to BofA.  (Am. Compl. ¶ 8.)  After Connell established its new account, BofA became aware of Reichart's "position within the company and knew he exercised control over Connell Auto's finances and bank accounts."  (Am. Compl. ¶ 8.)  According to Plaintiff, Reichart frequently went to BofA's principal branch in Oakland, California, and would present a Connell business check made

**United States District Court**
For the Northern District of California

payable to "Bank of America" or "Cash."  (Am. Compl. ¶ 3.)  Bank employees then would give him cash or a BofA cashiers check in return.  (Am. Compl. ¶ 3.)  Over the course of hundreds of transactions and many years, Reichart stole over $4 million from Plaintiff.  (Am. Compl. ¶ 3.)  On September 29, 2011, the Alameda County Superior Court sentenced him for grand theft and tax evasion.  (Am. Compl. ¶ 1.)

Plaintiff asserts that BofA knowingly participated in Reichart's scheme.  (Compl. ¶ 2.) Specifically, Plaintiff alleges that BofA "knew and did the following:"

a) Bank of America issued hundreds of cashiers checks for Reichart using Connell Auto's monies, and at least 385 of those cashiers checks, totaling $1,692,456, had payees such as "VISA", "American Express", "Neiman Marcus", and "Saks Fifth Avenue". . . . As Bank of America knew when it issued the cashiers checks with Connell Auto's funds, creditors such as Visa, American Express, Neiman Marcus and Saks Fifth Avenue do not need to be paid with cashiers checks, and the use of cashiers checks to pay such creditors would not appear on Connell's bank statements or cancelled checks.

b) In addition to the cashiers checks, employees at the Main Oakland Branch handed over enormous amounts of cash to Reichart. By 2007, on a weekly basis, Reichart was walking out the Oakland Main Branch doors with anywhere between $16,000 to $44,000 in cash and cashiers checks taken from Connell Auto's bank accounts, and he was doing so by structuring his withdrawals to be in increments less than $10,000.00 each, and generally less than $5,000.00 each. His weekly average in 2007 was more than $27,000 in cash and cashiers checks.

c) To evade Bank of America's transaction reporting requirements under federal law as well as the bank's internal controls, over 95% of the transactions conducted by Reichart and the Main Oakland Branch were carried out using Connell Auto company checks that did not exceed $10,000. Stealing millions of dollars by checks made payable in amounts less than $10,000 requires lots of trips to the bank. Reichart was in Oakland Main Branch numerous times a week, every week of the month, presenting Connell Auto checks that individually did not exceed $10,000. Oftentimes, on the same banking day, Reichart and Main Oakland Branch would use two Connell Auto company checks to obtain more than $10,000 in cash and cashiers checks from Connell Auto's accounts—however, the two Connell Auto checks used to obtain the cash and cashiers checks were each under $10,000. If the transactions were legitimate, there would be no reason to use two separate company checks—Reichart and Bank of America would have used one check for the total amount of the transaction (i.e., in an amount over $10,000).

d) Connell Auto is informed and believes, and thereon alleges, that Bank of America employees are trained to recognize "structuring" or "smurfing" undertaken to evade regulatory reporting requirements, and therefore knew at all times that Reichart was engaged in such illegal activities using his employer's funds.

e) Every Bank of America cashiers check contains a Remitter line identifying the purchaser of the check. On many occasions, Bank of America intentionally altered the identity of the Remitter imprinted on the cashiers check to falsely show someone other than Connell Auto as the purchaser of the cashiers check.

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

f) Bank of America issued statements for Connell Auto's bank accounts that did not accurately disclose the cash and cashiers check transactions, and did not show that Bank of America was regularly issuing cashier checks with payees such as "VISA", "American Express", "Neiman Marcus" and "Saks Fifth Avenue". The bank statements issued by Bank of America in fact concealed where Connell Auto's monies were going, and to whom.

g) After withdrawing cash from Connell Auto's bank accounts, Reichart would sometimes deposit the cash into a Bank of America personal checking account maintained in the name of Lorraine Espiritu. Withdrawing the cash from Connell Auto's account and depositing it into Espiritu's checking account took place in the same banking transaction, by the same Oakland Main Branch teller. Bank of America also issued many cashiers checks payable to it and then credited those checks to Bank of America loan accounts in Espiritu's name and to Espiritu's Banc of America brokerage account. Bank of America knew that these Espiritu Bank of America accounts were not accounts affiliated with Connell Auto in any way.

h) Bank of America issued cashiers checks payable to an individual but then allowed Reichart to negotiate the check himself for cash.

i) When other Bank of America branches or financial institutions were presented with cashiers checks for negotiation and called the Oakland Main Branch with questions regarding the suspicious transaction, Oakland Main Branch employees told those institutions to proceed with the transaction and accept the check.

j) In most instances when Reichart presented a Connell Auto check to be converted into a Bank of America cashiers check, Bank of America accepted a Connell Auto check with only Reichart's signature, notwithstanding that the Connell Auto checks had two lines for two authorized signatures. Aside from any question as to whether the item was properly payable, the Connell Auto check had an obvious irregularity.

k) When Connell Auto discovered Reichart's embezzlement scheme, it contacted Bank of America to obtain copies of its checks and the cashiers checks purchased with its monies. Bank of America briefly cooperated, but then abruptly stopped providing Connell Auto copies of the cashiers checks, no doubt realizing they evidenced Bank of America's knowing participation in Reichart's embezzlement scheme. It did not resume providing Connell Auto with copies of its own checks and the cashiers checks purchased with its monies until ordered to so by Judge Tigar of the Alameda County Superior Court. Even then, Bank of America dragged its feet, allowing needed records to be allegedly destroyed as part of Bank of America's supposed general retention policies for customer accounts.

(Am. Compl. ¶ 4; *accord* Am. Compl. ¶¶ 10-14, 18.)  In addition, Plaintiff asserts that BofA "continued to engage in these transactions even though it knew they were not legitimate Connell Auto business transactions" and that the bank employees "informed Reichart of the type of transactions that would be flagged as suspicious or otherwise reviewed internally by other Bank of America personnel."  (Am. Compl. ¶ 15; *accord* Am. Compl. ¶ 16.)  In this manner, "Reichart and

**United States District Court**
For the Northern District of California

1   Bank of America, acting together, concealed the true nature of the [embezzlement] transaction[s]."

2   (Am. Compl. ¶ 16; *see* Am. Compl. ¶¶ 17, 22.)

3          Plaintiff filed suit against BofA in California state court on October 18, 2011, alleging aiding

4   and abetting conversion and embezzlement, aiding and abetting breach of fiduciary duty, and breach

5   of contract.  [*See* Docket No. 1.]  Defendant removed the case to this Court on the basis of diversity

6   jurisdiction on November 17, 2011.  [*See* Docket No. 1.]  On November 3, 2011, Defendant moved

7   to dismiss the complaint for failure to state a claim upon which relief can be granted.  [Docket No.

8   6.]  On January 17, 2012, the court granted in part and denied in part the motion.  [Docket No. 16.]

9   Specifically, the court dismissed with leave to amend Plaintiff's aiding and abetting claims because

10  "Plaintiff ha[d] not adequately alleged that BofA had actual knowledge of Reichart's embezzlement

11  and conversion or his specific breach of fiduciary duty."  *Simi Mgmt. Corp. v. Bank of Am. Corp.*,

12  No. 11-5573-DMR, 2012 WL 259865, at *4 (N.D. Cal. Jan. 27, 2012).  The court declined to

13  dismiss Plaintiff's breach of contract claim.  *Id.* at *6.

14         Plaintiff filed its amended complaint on March 29, 2012.  [Docket No. 22.]  Defendant again

15  moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's complaint for

16  failure to state a claim.

17                              **II. Legal Standard**

18         When reviewing a motion to dismiss for failing to state a claim pursuant to Federal Rule of

19  Civil Procedure 12(b)(6), the court must "accept as true all of the factual allegations contained in the

20  complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may

21  dismiss the case "only where there is no cognizable legal theory" or there is an absence of

22  "sufficient factual matter to state a facially plausible claim to relief."  *Shroyer v. New Cingular*

23  *Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729,

24  732 (9th Cir. 2001)) (quotation marks omitted) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

25  (2009)).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court

26  to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556

27  U.S. at 678 (citation omitted).  In other words, the facts alleged to demonstrate an "entitle[ment] to

28  relief require[] more than labels and conclusions, and a formulaic recitation of the elements of a

United States District Court
For the Northern District of California

1   cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2005) (brackets in

2   original) (quotation marks omitted) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v.*

3   *City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001) ("Conclusory allegations of law . . . are insufficient

4   to defeat a motion to dismiss." (citation omitted)).

5         As a general rule, a court may not consider "any material beyond the pleadings" when ruling

6   on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However,

7   in certain circumstances, the court may consider extrinsic evidence without converting the motion

8   into a motion for summary judgment. *Id.* (citation omitted); *see* Fed. R. Civ. P. 12(d) ("If, on a

9   motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by

10  the court, the motion must be treated as one for summary judgment under Rule 56."). For example,

11  the court may examine "material which is properly submitted as part of the complaint." *Lee*, 250

12  F.3d at 688 (citation and quotation marks omitted). If a document's authenticity is not contested and

13  the complaint "necessarily relies" on it, the court may take that document into account even if it is

14  not physically attached to the complaint. *Id.* (citation and quotation marks omitted).

### III. Discussion

#### A. Plaintiff's Aiding and Abetting Claims

17        BofA contends that Plaintiff has once again failed to properly state aiding and abetting

18  claims, and that such claims trigger a heightened pleading standard. The bank further asserts that

19  Plaintiff's Amended Complaint still "does not assert [that BofA] had actual knowledge" of

20  Reichart's criminal activities and merely asserts "conclusory, formulaic assertions" that fall short of

21  the pleading requirements. (Def.'s Mot. 6-7 (footnote and quotation marks omitted).) BofA also

22  devotes substantial portions of its brief to an explanation of the various duties that it contends banks

23  do not owe their depositors under California law. It reasons that if banks do not have certain duties

24  to depositors, then Plaintiff cannot hold it liable for not having performed them.

#### 1. Aiding and Abetting in California

26        Under California law, liability for aiding and abetting the commission of an intentional tort

27  may attach in two ways: if a defendant (1) "'knows the other's conduct constitutes a breach of duty

28  and gives substantial assistance or encouragement to the other to so act'" or (2) "'gives substantial

United States District Court
For the Northern District of California

1 assistance to the other in accomplishing a tortious result and the [entity]'s own conduct, separately

2 considered, constitutes a breach of duty to the third person.'" *Seaman v. Sedgwick, LLP*, No. 11-

3 664, 2012 WL 254046, at *7 (C.D. Cal. Jan. 26, 2012) (not reported in F. Supp. 2d) (quoting *Casey*

4 *v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005)).  The first of these two modes of

5 proof requires that the defendant "have *actual knowledge* of the *specific primary wrong* the

6 defendant substantially assisted."  *In re First Alliance Mortgage Co.*, 471 F.3d 977, 993 (9th Cir.

7 2006) (emphasis added) (citation and quotation marks omitted); *accord Casey*, 127 Cal. App. 4th at

8 1146.  Mere allegations that a defendant had "vague suspicion of wrongdoing" or knew of "wrongful

9 or illegal conduct . . . d[o] not constitute sufficient pleading" that the defendant had "actual

10 knowledge."  *In re First Alliance Mortgage Co.*, 471 F.3d at 993 n.4 (citation and quotation marks

11 omitted).  In a breach of fiduciary duty claim, the plaintiff "must allege the defendant's actual

12 knowledge of the specific breach of fiduciary duty for which it seeks to hold the defendant liable."

13 *Casey*, 127 Cal. App. 4th at 1152.

14    **2. Analysis**

15    Plaintiff has adequately alleged that BofA had actual knowledge of Reichart's embezzlement

16 and conversion, and his specific breaches of fiduciary duty.  For aiding and abetting conversion and

17 embezzlement, the Amended Complaint states that "Bank of America . . . had *actual knowledge* that

18 Reichart was converting and embezzling Connell Auto's monies."  BofA "had actual knowledge that

19 Reichart was engaged in the [following] conduct [that] . . . constituted a breach of fiduciary duty

20 owed by Reichart to Connell[:]"

21    (a) embezzling its monies; (b) engaging in in-branch transactions at Oakland
    Main Branch that were designed to conceal from and mislead Connell Auto regarding
22    the use of its monies and the identity of persons/payees who were receiving Connell
    Auto's monies; (c) issuing company checks in amounts that did not exceed $10,000
23    for the purpose of disguising the true nature of the transaction and to prevent Connell
    Auto from detecting the transactions and how its monies were actually being used;
24    (d) purchasing cashiers checks with Connell Auto's monies and changing the
    Remitter from Connell Auto to the name of a third party, thereby knowingly
25    falsifying a negotiable instrument purchased with company funds; and (e) conducting
    in-branch transactions at Oakland Main Branch in which Reichart presented company
26    checks for cash and then deposited the cash proceeds into the Bank of America
    personal checking account of Lorraine Espiritu.

27

28

United States District Court

For the Northern District of California

1  (Am. Compl. ¶ 32.)  These statements allege that BofA had actual knowledge of the specific torts

2  Reichart committed.  *See In re First Alliance Mortgage Co.*, 471 F.3d at 993; *Casey*, 127 Cal. App.

3  4th at 1151-52.  Plaintiff therefore has properly pled aiding and abetting claims.

4  　　　BofA is incorrect in its assertion that a heightened pleading standard attaches to *Casey*'s

5  "actual knowledge" requirement.  Neither the Federal Rules of Civil Procedure nor case law call for

6  the vaulted pleading standard that BofA proposes.  Federal Rule of Civil Procedure 9(b) necessitates

7  that only fraud "must be pled with specificity[;] '[m]alice, intent, *knowledge*, and other condition of

8  mind of a person may be averred generally.'"  *Neilson v. Union Bank of Cali., N.A.*, 290 F. Supp. 2d

9  1101, 1119 (C.D. Cal. 2003) (second brackets in original) (emphasis added) (quoting Fed. R. Civ. P.

10  9(b)).  Plaintiff thus only needs to allege facts that, in concert with allegations that BofA had actual

11  knowledge of Reichart's criminal acts, "allow[] the court to draw the reasonable inference that the

12  defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 663 (citation omitted).  Plaintiff

13  has met this standard.

14  　　　BofA's argument that it cannot be held liable for legal duties it does not have misses the

15  point.  California law does limit the duties of a bank toward its depositors.  *See Casey*, 127 Cal. App.

16  4th at 1149-51.  Nevertheless, a bank's actions, even if they do not independently give rise to

17  liability, may serve as indicia of actual knowledge that buttress an aiding and abetting claim.  *Id.* at

18  1151-52; *see also Neilson*, 290 F. Supp 2d at 1120 (holding that use of atypical banking procedures

19  could raise inference that banks had actual knowledge of depositor's specific wrongdoing and

20  supports general allegations of actual knowledge in claims for aiding and abetting breach of

21  fiduciary duty).  Plaintiff therefore has fulfilled the pleading requirements for its aiding and abetting

22  causes of action.[1]  Because Plaintiff has properly stated claims for aiding and abetting embezzlement

23  and conversion, and aiding and abetting breach of fiduciary duty, the court denies BofA's motion to

24  dismiss these claims.

25  **B. Plaintiff's Breach of Contract Claim**

26  _____

27  　　　[1]Because Plaintiff has adequately pledged aiding and abetting claims based on BofA's actual knowledge of the intentional tort, it need not address Plaintiff's alternative theory of aiding and abetting liability based on the second mode of proof of such claims, as set forth in *Casey*, 127 Cal. App. 4th at

28  1144.  (*See* Am. Compl. ¶¶ 26, 33.)

**United States District Court**
For the Northern District of California

### 1. The Parties' Contentions

Plaintiff claims that BofA breached two written contracts between them, one operative prior to October 2, 2007 and one operative after that date. (Am. Compl. ¶¶ 37-44.) With respect to the earlier contract, Plaintiff asserts that BofA has not provided it with a copy of the agreement, except for a signature card which Plaintiff has attached to its Amended Complaint as an exhibit. (Am. Compl. ¶¶ 37, 40-42; *see* Am. Compl. Ex. C.) Plaintiff alleges that this contract permitted BofA "to pay items presented on Connell Auto's accounts [only if] the item bore two authorized signatures" and that BofA breached this contract by accepting checks signed by Reichart alone. (Am. Compl. ¶ 41; *see* Am. Compl. ¶¶ 42-44.) Plaintiff claims that BofA breached the later contract when it accepted checks presented by Reichart, because the new contract no longer listed Reichart as an authorized signatory. (Am. Compl. ¶¶ 39, 42-44; *see* Am. Compl. Ex. B.) Moreover, according to Plaintiff, both contracts stipulated that Connell "could obtain copies of cancelled checks and other paper items paid against its accounts" upon request. (Am. Compl. ¶ 42.) Plaintiff asserts that BofA breached the contracts when it did not provide Plaintiff with copies of cancelled checks and other paper items paid against the firm's accounts, and by destroying some of Plaintiff's banking records after receiving notice of Reichart's embezzlement. (Am. Compl. ¶ 43.)

BofA, however, contends that the signature card attached as Exhibit C to the Amended Complaint was the entire operative contract between it and Plaintiff until October 2, 2007. (Def.'s Mot. 13-14; *see also* Am. Compl. Ex. C.) BofA notes that the signature card states, "Bank may pay out funds on any one of the signatures below:," and identifies Reichart as an authorized signer on Plaintiff's account. (Def.'s Mot. 14.) Thus, contrary to Plaintiff's characterization of the contractual relationship between them, BofA avers that it was entitled to assume as a matter of law that Plaintiff authorized Reichart's actions. (Def.'s Mot. 14-15.) BofA asks the court, implicitly through the incorporation by reference doctrine, to treat this signature card as the complete contract between the parties before October 2, 2007. (Def.'s Mot. 13-14.) BofA presents no arguments against Plaintiff's claim that BofA breached their contract by not providing Plaintiff with copies of cancelled checks and other paper items paid against the firm's accounts, and by destroying some of Plaintiff's banking records.

United States District Court

For the Northern District of California

Plaintiff assails BofA's argument on several grounds.  It insists that BofA has not produced an agreement operative prior to October 2, 2007 which the company, as opposed to its officers, signed.  (Pl.'s Opp'n 10-11 ("Exhibit C [of the Amended Complaint, the signature card,] is an uncompleted Bank of America form contract that was not executed by Connell Auto.").)  Plaintiff thus states that it reasonably disputes the signature card's authenticity as the full contract between the parties.  (Pl.'s Opp'n 11.)  Plaintiff also highlights that BofA does not contest that it breached the post-October 2, 2007 contract, which warrants denial of BofA's motion to dismiss the claim.  (Pl.'s Opp'n 12.)

### 2. Incorporation by Reference

After examining the parties' submissions, the court finds that various statements on the signature card suggest that it may not be the full valid contract between Connell and BofA.  For example, as pointed out by Plaintiff, it does not appear to be signed by a representative of the corporate customer, Simi Management Corp.  (*Compare* Am. Compl. Ex. C (signature card), *with* Am. Compl. Ex. B (post-October2, 2007 contract between parties).)  Defendants' assertion that the signature card is the sole contract between the parties prior to the October 2, 2007 contract also is contradicted by the face of the signature card itself.  It states:  "You acknowledge receipt of the deposit agreement.  The agreement includes a provision for alternative dispute resolution."  (Am. Compl. Ex. C at 1.)  The court therefore will not apply the incorporation by reference rule and will not consider the signature card as a complete contract in the disposition of this motion.

### 3. Analysis

Plaintiff has properly stated a breach of contract claim.  The contents of the pre-October 2, 2007 contract at issue between the parties remains unclear.  Within this hazy factual context, BofA has failed to show that there is "no cognizable legal theory" by which Plaintiff could prevail on this claim.  *Shroyer*, 622 F.3d at 1041 (citation and quotation marks omitted).  The court therefore denies BofA's motion as to the Plaintiff's breach of contract claim.

Moreover, due to the same factual paucity of the record at this early stage of the litigation, and the often factually dependent nature of statutes of limitations, the court does not address BofA's

statute of limitations arguments at this time.  *See Cowen v. Aurora Loan Servs.*, No. 10-452, 2010
WL 3342196, at *5 (D. Ariz. Aug. 25, 2010).

### IV.  Conclusion

The court denies Defendant Bank of America's Motion to Dismiss.

IT IS SO ORDERED.

Dated: June 4, 2012



DONNA M. RYU
United States Magistrate Judge